**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:** _____

**Filing Date:  May 19, 2014**

**Docket No. 32,920**

**GREGORY VIALPANDO,**

>       **Worker-Appellee,**

**v.**

**BEN'S AUTOMOTIVE SERVICES and**
**REDWOOD FIRE & CASUALTY,**

>       **Employer/Insurer-Appellants.**

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Terry Kramer, Workers' Compensation Judge**

Peter D. White
Santa Fe, NM

for Appellee

French & Associates, P.C.
Lisa T. Mack
Albuquerque, NM

for Appellants

**OPINION**

**WECHSLER, Judge.**

**{1}**     We consider in this appeal whether, under the Workers' Compensation Act (the Act), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2013), an employer and insurer must reimburse an injured worker for medical marijuana used pursuant to the Lynn and Erin Compassionate Use Act (Compassionate Use Act), NMSA 1978, §§ 26-2B-1 to -7 (2007). The workers' compensation judge (WCJ) found that Worker Gregory Vialpando was qualified to participate in the State of New Mexico Department of Health Medical Cannabis Program authorized by the Compassionate Use Act and that such treatment would be

1

reasonable and necessary medical care. The WCJ ordered Worker to pay for medical marijuana through the program and Employer and Insurer Ben's Automotive Services and Redwood Fire & Casualty (collectively, Employer) to reimburse Worker. Employer appeals, arguing that (1) the WCJ erred because his order is illegal and unenforceable under federal law and also thereby contrary to public policy, and (2) the Act and regulations promulgated pursuant thereto do not recognize reimbursement for medical marijuana. Because we agree with the WCJ that the Act authorizes reimbursement for medical marijuana, we affirm.

## BACKGROUND

**{2}** In the course of, and arising out of, his employment with Employer, Worker sustained a low back injury on June 9, 2000 that resulted in his undergoing numerous surgical procedures. In a stipulated compensation order entered August 22, 2008, the WCJ determined that Worker had reached maximum medical improvement for impairments for physical and psychological conditions and sleep apnea. Worker had a combined whole body impairment rating of 43 percent to 46 percent, and the parties agreed that he had a 99 percent permanent partial disability. One doctor described Worker's pain as "high intensity multiple-site chronic muscle, joint, and nerve pain directly resulting from back injury, followed by failed spinal surgery and attendant myalgia/myositis from resulting compensatory structural imbalances." He considered Worker to be suffering "from some of the most extremely high intensity, frequency, and duration of pain, out of all of the thousands of patients I've treated within my 7 years practicing medicine." At that time, Worker was taking "multiple narcotic based pain relievers [and] multiple anti-depressant medications."

**{3}** On April 8, 2013, Worker filed an application for approval by the WCJ of medical treatment for medical marijuana (application for approval). Worker had been certified for the program by his health care provider and another medical doctor based on severe chronic pain that was debilitating.

**{4}** After a hearing, and denial of reconsideration, the WCJ found that Worker was "entitled to ongoing and reasonable medical care" with Worker's authorized health care provider and referrals of the health care provider, that Worker was qualified to participate in the medical cannabis program authorized by the Compassionate Use Act, and that participation in the program constituted reasonable and necessary medical care. The WCJ ordered Worker to pay for the authorized medical marijuana to be reimbursed by Employer. Employer appealed.

## AUTHORITY FOR MEDICAL MARIJUANA REIMBURSEMENT

**{5}** We initially address Employer's argument that the Act and attendant regulations do not authorize the reimbursement of medical marijuana. Because the argument raises a question of interpretation of the Act based on the facts of this case, we review the WCJ's order de novo. *DeWitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 14, 146 N.M. 453, 212

P.3d 341. We apply the plain meaning of the words of a statute when the meaning of the statutory language is "truly clear." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 22, 117 N.M. 346, 871 P.2d. 1352. When there is any doubt as to the meaning of the words of the statute—that is, when the meaning of the statute is at all vague, uncertain, ambiguous, or otherwise doubtful—it is "part of the essence of judicial responsibility to search for and effectuate the legislative intent . . . underlying the statute." *Id.* ¶¶ 22-23.

**{6}** Under the Act, an employer is required to provide an injured worker "reasonable and necessary health care services from a health care provider." Section 52-1-49(A). "Health care provider" is defined in the Act with a listing of various types of providers that includes hospitals, doctors, nurses, and therapists. NMSA 1978, § 52-4-1 (2007). In 2007, the list was amended to add licensed pharmacists and athletic trainers. The list does not include a dispenser of medical marijuana under the Compassionate Use Act. Section 52-4-1(H), (O). Section 52-4-1(P) does include as a health care provider "any person or facility that provides health-related services in the health care industry, as approved by the director" of the Workers' Compensation Administration (WCA), but it is undisputed that the director has not approved a dispenser of medical marijuana as a health care provider under this provision.

**{7}** The director of the WCA has adopted regulations pursuant to NMSA 1978, Section 52-4-5 (1993) and NMSA 1978, Section 52-5-4 (2003). The regulations applicable when Worker filed his application for approval incorporated both statutory provisions and defined "health care provider" as "any person, entity, or facility authorized to furnish health care to an injured or disabled worker pursuant to NMSA 1978, Section 52-4-1, including any provider designated pursuant to NMSA 1978, Section 52-1-49." 11.4.7.7(W) NMAC (12/31/2011). The regulations further defined "services" as "health care services, . . . procedures, drugs, products or items provided to a worker by an HCP [health care provider], pharmacy, supplier, caregiver, or freestanding ambulatory surgical center which are reasonable and necessary for the evaluation and treatment of a worker with an injury or occupational disease covered under [the Act] or the New Mexico Occupational Disease Disablement Law." 11.4.7.7(SS) NMAC (12/31/2011).

**{8}** The regulations address the situation before us in which a health care provider recommends that a worker obtain a product that is reasonable and necessary for the worker's treatment but which, because of its nature, may not be available from another health care provider. In this case, the product is medical marijuana that is subject to the Compassionate Use Act.

**{9}** The WCJ found that Worker's "[p]articipation in a course of cannabis in the New Mexico [M]edical Cannabis Program would constitute reasonable and necessary medical care." Dr. Belyn Schwartz, Worker's health care provider, recommended the services and provided the medical certification form necessary under rules adopted pursuant to the Compassionate Use Act for Worker to participate in the program. *See* § 26-2B-7(A) (requiring the New Mexico Department of Health to adopt rules to implement the Compassionate Use Act). Dr. David Peters also provided a certification form.

3

**{10}** Section 52-1-49(A) requires an employer to provide a worker "reasonable and necessary health care services from a health care provider." Employer argues that the services ordered by the WCJ do not fall within Section 52-1-49 because the services are provided by the program, which is not recognized by the director as a health care provider. However, the regulations do not support Employer's argument. By defining "services" as including a product from a supplier that is reasonable and necessary for a worker's treatment, the regulations do not contemplate that every aspect of a worker's reasonable and necessary treatment be directly received from a health care provider. Such a requirement would be unworkable. A worker's treatment may well require services that are not available from a health care provider. The most obvious of such services may be medical supplies or equipment. As contemplated by the regulations, providers other than a health care provider such as a pharmacy (as distinguished from a licensed pharmacist), supplier, or caregiver may provide such services. 11.4.7.7(U) NMAC (12/31/2011). The only prerequisite is that the service be "reasonable and necessary" for the worker's treatment. *Id.* When understood in conjunction with the regulations, Section 52-1-49 requires only that a health care provider have the responsibility for the provision of the reasonable and necessary services, not that each and every service must be provided by a health care provider.

**{11}** Employer also contends that we must view the service in this case as that of a prescription drug rather than as another type of service. A "prescription drug" is defined in the regulations as "any drug, generic or brand name, which requires a written order from an authorized HCP for dispensing by a licensed pharmacist or authorized HCP." 11.4.7.7(OO) NMAC (12/31/2011). Yet, by definition, medical marijuana is not a prescription drug. Although it is a controlled substance, it is not dispensed by a licensed pharmacist or a health care provider upon a written order of a health care provider. A doctor may not order medical marijuana but may certify a patient to enroll in the medical cannabis program. Section 26-2B-3(14). The program is not a licensed pharmacist or a health care provider. To Employer, the fact that the program is not a licensed pharmacist or a health care provider is the reason that the WCJ's order does not comply with the Act or the regulations. But this argument rests on the basis that the definition of a prescription drug is the only manner by which the WCJ could order Employer's reimbursement of medical marijuana. It does not take into account the definition of "services." That definition is significantly broader than the definition of prescription drug. It includes non-prescription drugs and other products and further includes providers other than licensed pharmacists and health care providers. There is no basis in the regulations to declare that the definition of prescription drug is the exclusive manner to address the provision of medical marijuana to an injured worker.

**{12}** Moreover, if we were to apply the definition of prescription drug as a model for medical marijuana, our analysis would lead to the same conclusion. Indeed, medical marijuana is a controlled substance and is a drug. Instead of a written order from a health care provider, it requires the functional equivalent of a prescription— certification to the program. Although it is not dispensed by a licensed pharmacist or health care provider, it is dispensed by a licensed producer through a program authorized by the Department of Health. The control that underlies the dispensing of a prescription drug in the regulations,

4

requiring either a licensed pharmacist or a recognized health care provider, is present because of the Department of Health licensing provisions mandated by the Compassionate Use Act. *See* § 26-2B-3(D) (requiring a "licensed producer" of medical marijuana to be licensed by the Department of Health). We note that prior to 2007, a licensed pharmacist was not listed as a health care provider, even though the regulation defining a prescription drug was the same as it was for the purposes of this case and permitted a licensed pharmacist to dispense a prescription drug. *See* 2007 N.M. Laws, ch. 328, § 3(O) (adding "a pharmacist licensed pursuant to the provisions of Chapter 61, Article 11 NMSA 1978" to the listing of health care providers in Section 52-4-1); 11.4.7.7(OO) NMAC (12/31/2011) (defining "prescription drug" as "any drug, generic or brand name, which requires a written order from an authorized HCP for dispensing by a licensed pharmacist or authorized HCP").

**{13}**     In this regard, we further observe the legislative intent of the Compassionate Use Act "to allow the beneficial use of medical cannabis in a regulated system for alleviating symptoms caused by debilitating medical conditions and their medical treatments." Section 26-2B-2. The Legislature has provided in the Act that a worker receive through an employer reasonable and necessary health care services, which the regulations define to include "drugs, products or items provided to a worker" in various ways provided that they are "reasonable and necessary for the evaluation and treatment of a worker." 11.4.7.7(SS) NMAC (12/31/2011); Section 52-1-49(A). When read together, we view the legislative intent to be that a worker's treatment under a program authorized by the Compassionate Use Act that has been determined by a WCJ to be reasonable and necessary treatment is embraced within the Act. *See State v. Almanzar*, 2014-NMSC-001, ¶ 15, 316 P.3d 183 (stating that the interpretation of a statute is informed by its function within a comprehensive legislative scheme); *State v. Rivera*, 2004-NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d 939 (stating that wherever possible we must read legislative enactments as harmonious instead of contradictory); 1A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction*, § 31:6, at 696-705 (7th ed. 2009) (stating that the general rules of statutory interpretation apply to regulations); *see* NMSA 1978, § 52-5-1 (1990) ("It is the intent of the [L]egislature [that the Act] be interpreted to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers[.]").

## CONFLICT WITH FEDERAL LAW

**{14}**     Employer argues that the order by the WCJ is illegal because Employer would be required to violate federal law in reimbursing Worker for his medical marijuana expenses. Additionally, Employer argues that the order of the WCJ is contrary to federal public policy as expressed by the Controlled Substances Act (CSA), 21 U.S.C. §§ 801-904 (2012).

**{15}**     Under the CSA, marijuana is classified as a Schedule I controlled substance and, as such, it is generally illegal to use or possess it except as related to federally approved research. 21 U.S.C. §§ 812, 822, 823(f). There is no exemption under federal law for medical uses. *See Gonzales v. Raich*, 545 U.S. 1, 27-28 (2005). As follows from *Gonzales*,

5

the Supremacy Clause dictates that any conflict between the Compassionate Use Act and the CSA would be resolved in favor of the CSA. *See Gonzales*, 545 U.S. at 29 (stating that state law bows to federal law under the Supremacy Clause to the extent that there is conflict). But this case is unlike *Gonzales* because *Gonzales* resolved a direct conflict between the CSA and state law authorizing marijuana use and cultivation for medical purposes that this case does not present. *See Gonzales*, 545 U.S. at 5. Employer does not attempt to challenge the legality of the Compassionate Use Act. Instead, Employer asserts that, because marijuana remains a controlled substance under federal law, the order to reimburse Worker for money spent purchasing a course of medical marijuana "essentially requires" Employer to commit a federal crime. However, Employer does not cite to any federal statute it would be forced to violate, and we will not search for such a statute. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

{16}     Employer also argues that the order should be reversed because it is contrary to federal public policy as reflected in the CSA and *Gonzales*. Worker contends that federal public policy supports medical marijuana because the Department of Justice has announced a somewhat deferential enforcement policy. Although not dispositive, we note that the Department of Justice has recently offered what we view as equivocal statements about state laws allowing marijuana use for medical and even recreational purposes. On one hand, the Department of Justice affirmed that marijuana remains illegal under the CSA and that federal prosecutors will continue to aggressively enforce the statute. But, on the other hand, and in the same documents, the Department of Justice identified eight areas of enforcement priority[1]

---

[1]The eight identified areas of enforcement are:

(1) Preventing the distribution of marijuana to minors;
(2) Preventing revenue from the sale of marijuana from going to criminal enterprises, gangs, and cartels;
(3) Preventing the diversion of marijuana from states where it is legal under state law in some form to other states;
(4) Preventing state-authorized marijuana activity from being used as a cover or pretext for the trafficking of other illegal drugs or other illegal activity;
(5) Preventing violence and the use of firearms in the cultivation and distribution of marijuana;
(6) Preventing drugged driving and the exacerbation of other adverse public health consequences associated with marijuana use;
(7) Preventing the growing of marijuana on public lands and the attendant public safety and environmental dangers posed by marijuana production on public lands;
(8) Preventing marijuana possession or use on federal property.

and indicated that outside of those priorities it would generally defer to state and local authorities. In addition, the Department of Justice stated that it informed the Governors of Washington and Colorado, two states that voted to legalize possession of marijuana and regulate its production and distribution, that it would defer its right to challenge those laws. We also observe that New Mexico public policy is clear. Our State Legislature passed the Lynn and Erin Compassionate Use Act "to allow the beneficial use of medical cannabis in a regulated system for alleviating symptoms caused by debilitating medical conditions and their medical treatments." Section 26-2B-2. We decline to reverse the order on the basis of federal law or public policy.

**CONCLUSION**

**{17}**    For the foregoing reasons, we affirm the order of the WCJ.

**{18}    IT IS SO ORDERED.**

_____
                                        **JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**MICHAEL E. VIGIL, Judge**

---

Memorandum from James M. Cole, Deputy Attorney General, to All United States Attorneys, Guidance Regarding Marijuana Enforcement (August 29, 2013).