## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2021-NMCA-038**

**Filing Date: January 28, 2020**

**No. A-1-CA-37142**

**SACRED GARDEN, INC.,**
**a New Mexico non-profit corporation,**

        Plaintiff-Appellant,

v.

**NEW MEXICO TAXATION &**
**REVENUE DEPARTMENT,**

        Defendant-Appellee.

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE**
**Chris Romero, Hearing Officer**

Certiorari Granted, March 29, 2021, No. S-1-SC-38164. Released for Publication October 5, 2021.

Joe Lennihan
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
Cordelia Friedman, Special Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**M. ZAMORA, Judge.**

**{1}**    Sacred Garden (Taxpayer) appeals following the denial of its claims for tax refunds. The issue before us concerns the application of the deduction from gross receipts for prescription drugs, set forth in NMSA 1978, Section 7-9-73.2 (2007), to medical marijuana dispensed, pursuant to the Lynn and Erin Compassionate Use Act,

NMSA 1978, §§ 26-2B-1 to -7 (2007, as amended through 2019) (Compassionate Use Act). Because we conclude that the refund claims were erroneously denied, we reverse.

## BACKGROUND

**{2}** Taxpayer is a licensed producer authorized to dispense medical marijuana to qualified patients consistent with the Compassionate Use Act. In the course of the underlying administrative proceedings Taxpayer sought refunds of gross receipts taxes that it paid in association with sales of medical marijuana from 2011-2016. Those claims were denied, Taxpayer filed formal protests, and the protests were consolidated. Taxpayer filed a motion for summary judgment, which was denied. The consolidated matters then proceeded to a hearing on the merits. The hearing officer ultimately concluded that, notwithstanding Taxpayer's compliance with the Compassionate Use Act, the medical marijuana it dispenses to qualified patients does not constitute a "prescription drug" for purposes of the statutory deduction set forth in Section 7-9-73.2. Accordingly, Taxpayer's protests were denied. This appeal followed.

## STANDARD OF REVIEW

**{3}** The facts are not in dispute, and the issue presented on appeal, which requires us to engage in statutory construction, is purely legal. Under the circumstances, we apply de novo review. *A&W Rests., Inc. v. N.M. Taxation & Revenue Dep't*, 2018-NMCA-069, ¶ 6, 429 P.3d 976.

## PRESERVATION

**{4}** As an initial matter, we reject the New Mexico Taxation & Revenue Department's (the Department) suggestion that the issue presented on appeal was not properly preserved. Taxpayer clearly raised the issue by way of motion for summary judgment. The denial of that motion was sufficient to preserve the issue; Taxpayer was not required to renew its argument in closing or otherwise. *See Gallegos v. State Bd. of Educ.*, 1997-NMCA-040, ¶ 12, 123 N.M. 362, 940 P.2d 468 ("[A]s long as (1) the facts are not in dispute, (2) the only basis of the ruling is a matter of law which does not depend to any degree on facts to be addressed at trial, (3) there is a denial of the motion, and (4) there is an entry of a final judgment with an appeal therefrom, then the appellant may include in the appeal the purely legal issues that were argued unsuccessfully in the motion for summary judgment, and the appellant need not have renewed that legal issue during trial to preserve it."); *see Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717 ("To preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court."). We therefore proceed to the merits.

## DISCUSSION

**{5}** Well-established principles of statutory construction guide us in our interpretation of the state tax code. Our primary goal is "to give effect to the intent of the [L]egislature."

*Dell Catalog Sales L.P. v. N.M. Taxation & Revenue Dep't*, 2009-NMCA-001, ¶ 19, 145 N.M. 419, 199 P.3d 863 (internal quotation marks and citation omitted). "We discern legislative intent by first looking at the plain meaning of the language of the statute, reading the provisions . . . together to produce a harmonious whole. *Id.* (internal quotation marks and citation omitted). Additionally, we may consider the statute's history and background. *Valenzuela v. Snyder*, 2014-NMCA-061, ¶ 16, 326 P.3d 1120.

**{6}** "There exists a statutory presumption that all receipts from engaging in business in New Mexico are taxable." *A&W Rests., Inc.*, 2018-NMCA-069, ¶ 7 (citing NMSA 1978, § 7-9-5(A) (2002)). The right to a deduction must be clearly and unambiguously expressed, and the taxpayer bears the burden of establishing that it is entitled to the statutory deduction. *See TPL, Inc. v. N.M. Taxation & Revenue Dep't*, 2003-NMSC-007, ¶ 9, 133 N.M. 447, 64 P.3d 474. Nevertheless, these provisions must also be given "fair, unbiased, and reasonable construction, without favor or prejudice to either the taxpayer or the [s]tate, to the end that the legislative intent is effectuated and the public interests to be subserved thereby are furthered." *Chavez v. Comm'r of Revenue*, 1970-NMCA-116, ¶ 7, 82 N.M. 97, 476 P.2d 67.

**{7}** The statutory deduction at issue in this case, Section 7-9-73.2, provides in relevant part:

> A.      Receipts from the sale of prescription drugs . . . may be deducted from gross receipts.
>
> B.      For the purposes of this section, "prescription drugs" means insulin and substances that are:
>
>> (1)      dispensed by or under the supervision of a licensed pharmacist or by a physician or other person authorized under state law to do so;
>>
>> (2)      prescribed for a specified person by a person authorized under state law to prescribe the substance; and
>>
>> (3)      subject to the restrictions on sale contained in Subparagraph 1 of Subsection (b) of 21 [U.S.C. §] 353 [2018].

The question before us is whether medical marijuana dispensed, pursuant to the Compassionate Use Act, may be characterized as a prescription drug within the meaning of Section 7-9-73.2(A).

**{8}** Subsection B defines "prescription drugs" for purposes of the statutory gross receipts deduction, and this definition is controlling. *See, e.g.*, *Amarillo-Pecos Valley Truck Lines v. Gallegos*, 1940-NMSC-004, ¶ 7, 44 N.M. 120, 99 P.2d 447 (illustrating that when the Legislature provides a specific definition within a statute, that specific definition controls for the purpose of that statute); *see Hi-Country Buick GMC, Inc. v.*

*N.M. Taxation & Revenue Dep't*, 2016-NMCA-027, ¶ 21, 367 P.3d 862 (applying the fundamental principle of statutory construction favoring the application of a more specific statutory definition over a general definition that covers the same subject matter). It establishes three requisites.

**{9}** First, the substance must be "dispensed by or under the supervision of a . . . person authorized under state law to do so[.]" Section 7-9-73.2(B)(1). Insofar as Taxpayer is a licensed producer under the Compassionate Use Act that is undisputedly authorized under state law to dispense medical marijuana, the first requirement was satisfied.

**{10}** Second, the substance must be "prescribed for a specified person by a person authorized under state law to prescribe the substance[.]" Section 7-9-73.2(B)(2). The word "prescribed" is not further defined in Section 7-9-73.2. However, the following related statutory section provides, " 'prescribe' means to authorize the use of an item or substance for a course of medical treatment." NMSA 1978, § 7-9-73.3(G)(4) (2014). We deem this applicable. *See State v. Ogden*, 1994-NMSC-029, ¶ 28, 118 N.M. 234, 880 P.2d 845 ("Statutes on the same general subject should be construed by reference to each other, the theory being that the Court can discern legislative intent behind an unclear statute by reference to similar statutes where legislative intent is more clear." (citation omitted)). There is no dispute that the use of the medical marijuana at issue in this case was authorized by and for specific persons, in accordance with state law (*i.e.*, the Compassionate Use Act). Accordingly, we conclude that the second requirement was satisfied as well.

**{11}** The hearing officer arrived at a different conclusion regarding this requirement because the Compassionate Use Act does not expressly provide that medical marijuana is a prescription drug or is to be prescribed. On appeal, the Department similarly focuses on this feature of the Compassionate Use Act. However, this essentially ignores the definition of "prescribe" set forth in Section 7-9-73.3(G)(4). We reject such an approach. Moreover, we have previously recognized that the certifications contemplated by the Compassionate Use Act are the "functional equivalent" of prescriptions. *Vialpando v. Ben's Auto. Servs.*, 2014-NMCA-084, ¶ 12, 331 P.3d 975; *see also Lewis v. Am. Gen. Media*, 2015-NMCA-090, ¶ 20, 355 P.3d 850 (observing that under the Compassionate Use Act, "medical certification forms are the functional equivalents of prescriptions"). Although the Department contends that this aspect of the Court's decision in *Vialpando* is dicta, and should not be regarded as persuasive authority outside the context of workers' compensation, we do not hesitate to draw guidance from that opinion.

**{12}** Third and finally, the substance must be "subject to the restrictions on sale contained in Subparagraph 1 of Subsection (b) of 21 [U.S.C. §] 353." Section 7-9-73.2(B)(3). This provision, which appears within the federal Food, Drug and Cosmetics Act, restricts the sale of any drug which, "because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to

administer such drug[.]" 21 U.S.C. § 353(b)(1)(A). Medical marijuana is such a restricted drug, insofar as the Compassionate Use Act provides for access only after the patient has been duly diagnosed with a debilitating medical condition and has received written certification from a licensed practitioner that, in the practitioner's professional opinion, the potential health benefits of medical marijuana would likely outweigh the health risks to the patient. *See* § 26-2B-3(G), (H). The relevant provision within the federal Food, Drug and Cosmetics Act further provides that restricted drugs "shall be dispensed only . . . upon a written prescription of a practitioner licensed by law to administer such drug[s.]" 21 U.S.C. § 353(b)(1)(B). In this state, the dispensing of medical marijuana is so restricted. *See Vialpando*, 2014-NMCA-084, ¶ 12 (explaining that the certification required under the terms of the Compassionate Use Act is the functional equivalent of a prescription, and observing that the control that underlies the dispensing of a prescription drugs is similarly present under the Compassionate Use Act and associated regulations). Accordingly, we conclude that the third requirement is satisfied as well. *See United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 16, 148 N.M. 426, 237 P.3d 728 ("We have long adhered to the notion that the spirit, as well as the letter of the statute, must be respected; and where the whole context of a law demonstrates a particular intent in the [L]egislature to effect a certain object, some degree of implication may be called in to aid that intent." (alteration, internal quotation marks, and citation omitted)).

**{13}** We understand the Department to contend that insofar as federal law does not recognize that medical marijuana can be safe for use or dispensed on written prescription, we should arrive at a different conclusion. However, we have previously rejected the notion that potential conflict with equivocal federal policy precludes medical marijuana from receiving similar treatment to other drugs that are dispensed under carefully controlled circumstances. *See Lewis*, 2015-NMCA-090, ¶¶ 24-32; *Vialpando*, 2014-NMCA-084, ¶¶ 15-16. We therefore remain unpersuaded that consideration of federal law requires a different result.

**{14}** The Department further contends that insofar as medical marijuana is not a "prescription drug" in other statutory contexts, it should not be so classified for purposes of the statutory deduction from gross receipts. However, as previously stated, the definitions within the gross receipts tax provisions are controlling for the present purposes and we need not look further.

**{15}** Medical marijuana dispensed pursuant to the Compassionate Use Act meets the criteria set forth in Section 7-9-73.2(B). However, to the extent that the statutory terminology might be susceptible to different construction, we briefly turn to other indicia of legislative intent. *Renzenberger, Inc. v. N.M. Taxation & Revenue Dep't*, 2018-NMCA-010, ¶ 7, 409 P.3d 922 ("If there is an ambiguity or a lack of clarity, we will turn to other aspects of statutory construction, including the purpose of the statute and its legislative history.").

**{16}** Beginning with relevant legislative history, although cited by neither party, it is noteworthy that the financial impact report issued in association with the

Compassionate Use Act did not contemplate that any tax revenue would be generated thereby. *See Griego v. Oliver*, 2014-NMSC-003, ¶ 47 n.7, 316 P.3d 865 ("This Court . . . may take judicial notice of legislative facts by resorting to whatever materials it may have at its disposal establishing or tending to establish those facts." (alteration, internal quotation marks, and citation omitted)); *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 35, 117 N.M. 346, 871 P.2d 1352 (indicating that financial impact reports may be considered by courts in discerning legislative intent). This suggests that the Legislature intended receipts from the sale of medical marijuana to be deductible from gross receipts.

{17} Consideration of underlying legislative purposes supports the same conclusion. The Compassionate Use Act was expressly intended "to allow the beneficial use of medical cannabis in a regulated system for alleviating the symptoms caused by debilitating medical conditions and their medical treatments." Section 26-2B-2. To paraphrase, the Compassionate Use Act was intended to make medical marijuana accessible to those with debilitating medical conditions who might benefit from the use thereof. It is reasonably self-evident that the deduction from gross receipts for prescription drugs was similarly intended to make medical treatment more accessible, by lessening the expense to those who require it. These statutes should be read harmoniously, to give effect to their commonality of purpose. *See Rauscher, Pierce, Refsnes, Inc. v. N.M. Taxation & Revenue Dep't*, 2002-NMSC-013, ¶ 24, 132 N.M. 226, 46 P.3d 687 (observing that we construe statutes relating to the same subject matter together so as to maintain a consistent and sensible scheme); *State v. Ordunez*, 2010-NMCA-095, ¶ 5, 148 N.M. 620, 241 P.3d 621 ("We read statutes harmoniously with each other whenever possible, and we interpret statutes to facilitate and promote the Legislature's accomplishment of its purpose." (alteration, internal quotation marks, and citations omitted)), *aff'd in part, disapproved in part by*, 2012-NMSC-024, 283 P.3d 282. Applying the statutory deduction set forth in Section 7-9-73.2 to receipts from the sale of medical marijuana dispensed pursuant to the Compassionate Use Act best achieves this legislative purpose.

**CONCLUSION**

{18} For the foregoing reasons, we reverse the hearing officer's denial of Taxpayer's request for gross receipt tax refunds.

{19} **IT IS SO ORDERED.**

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JULIE J. VARGAS, Judge**