This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

No. A-1-CA-37587

**TVSLR, LLC,**

Protestant-Appellee,

v.

**NEW MEXICO TAXATION &
REVENUE DEPARTMENT,**

Respondent-Appellant.

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE
Chris Romero, Hearing Officer**

Marrs Griebel Law, Ltd.
Clinton W. Marrs
Albuquerque, NM

for Appellee

Hector H. Balderas, Attorney General
Cordelia Friedman, Special Assistant Attorney General
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}** This appeal concerns the State's effort to collect unpaid gross receipts tax from Vernon's Hidden Valley Steakhouse (VSH), formerly owned by Michael Baird as a single-member LLC. The New Mexico Taxation and Revenue Department (the Department) appeals from an Administrative Hearings Office decision and order (the Order) partially granting TVSLR, LLC's protest of the Department's assessment of TVSLR's liability as a successor in business to VSH. We hold that TVSLR is not only a successor in business, but also a "mere continuation" of VSH, and accordingly reverse.

**BACKGROUND**

**{2}**     Prior to opening VSH in 2005, Michael Baird, along with his father, Keith Baird, formed TVSLR as a two-member LLC. TVSLR owned and developed the Village Shops at Los Ranchos (the Village Shops) and leased the shops to tenants who operated a variety of businesses, as well as a restaurant and bar. In 2009, TVSLR took out a mortgage on the Village Shops for $176,000 and began leasing the Village Shops' restaurant and bar space and operating assets to VSH for a term of five years in which $234,600 was to be paid at a rate of $3,910.00 per month. VSH was itself organized by Michael, as its sole member, in 2009. As well, TVSLR leased a liquor license from VSH for ten years.

**{3}**     In March 2014, TVSLR renewed the lease with VSH, adding office space and raising the monthly rent to $11,526.67 per month. VSH also filed its combined systems reporting tax returns (CRS returns), comprised of gross receipts taxes and withholding taxes. In 2015, VSH began filing its CRS returns without remitting payment of the reported amounts due and became delinquent on CRS tax payments.

**{4}**     VSH operated the bar and restaurant space with a speak-easy theme from 2009 to 2016. After VSH failed to pay rent in 2016, TVSLR terminated the lease, evicted VSH from the premises, and repossessed its assets. In August 2016, TVSLR itself began to operate the restaurant and bar in the Village Shops. Keith Baird hired Michael's wife, Kimberly Baird, to manage and operate the restaurant. Kimberly hired most of VSH's former employees and continued to work with many of the vendors and suppliers that formerly worked with VSH.

**{5}**     On September 28, 2016, the Department determined TVSLR to be a successor in business to VSH and a "mere continuation" of VSH and assessed its tax liability in the amount of $164,054.01 in unpaid tax principal. On December 19, 2016, TVSLR filed a protest. The Administrative Hearing Officer (AHO) who reviewed the protest ultimately concluded that TVSLR had overcome the Department's presumption of correctness and partially granted TVSLR's protest, determining that although TVSLR was a successor in business to VSH, it was not a "mere continuation" of VSH. Thus, based upon the conclusion that there was no continuity of directors, officers, and shareholders between VSH and TVSLR, the AHO limited TVSLR's tax liability. The Department appeals.

**DISCUSSION**

**{6}**     On appeal, the Department asserts that (1) the AHO correctly determined that TVSLR is a successor in business; and (2) the AHO erred in determining that TVSLR is not a mere continuation of VSH, thereby limiting TVSLR's liability to the value of the transferred tangible and intangible assets.

**Standard of Review**

**{7}** Since the issue presented is one of statutory interpretation regarding the meaning of NMSA 1978, Section 7-1-61 (2017), we review the Order de novo. *See A&W Rests., Inc. v. Tax'n & Revenue Dep't*, 2018-NMCA-069, ¶ 6, 429 P.3d 976 ("The meaning of language used in a statute is a question of law that we review de novo." (internal quotation marks and citation omitted)). While we are not bound by the AHO's interpretation of the statute, this Court will set aside the Order only if it is: "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." NMSA 1978, § 7-1-25(C) (2015); *see Stockton v. N.M. Tax'n & Revenue Dep't*, 2007-NMCA-071, ¶ 8, 141 N.M. 860, 161 P.3d 905 (same) (internal quotation marks and citation omitted).

**{8}** "Our primary goal [in interpreting a statute] is to give effect to the intent of the Legislature." *Sacred Garden, Inc. v. N.M. Tax'n & Revenue Dep't*, 2021-NMCA-038, ¶ 5, 495 P.3d 576 (alteration, internal quotation marks, and citation omitted), *cert. granted*, 2021-NMCERT-___ (No. S-1-SC-38164, Mar. 29, 2021). "We discern legislative intent by first looking at the plain meaning of the language of the statute, [and] reading the provisions together to produce a harmonious whole." *Id.* (omission, internal quotation marks, and citation omitted).

**{9}** "There is a presumption that all persons engaging in business in New Mexico are subject to the gross receipts tax." *TPL, Inc. v. N.M. Tax'n & Revenue Dep't*, 2003-NMSC-007, ¶ 9, 133 N.M. 447, 64 P.3d 474; *see* NMSA 1978, § 7-9-5(A) (2019) ("To prevent evasion of the gross receipts tax and to aid in its administration, it is presumed that all receipts of a person engaging in business are subject to the gross receipts tax."). The Department's assessment of taxes or demand for payment "is presumed to be correct." NMSA 1978, § 7-1-17(C) (2007). Because the Department has the authority to enact regulations that interpret statutes, those regulations similarly carry a presumption that they are a "proper implementation of the provisions of the laws[.]" NMSA 1978, § 9-11-6.2(G) (2015); *see Chevron U.S.A., Inc. v. State. ex rel. Tax'n & Revenue Dep't*, 2006-NMCA-050, ¶ 16, 139 N.M. 498, 134 P.3d 785 ("Agency regulations that interpret statutes and are promulgated under statutory authority are presumed proper[.]"). Nevertheless, "[a] tax statute must also be given a fair, unbiased, and reasonable construction, without favor or prejudice to either the taxpayer or the [s]tate, to the end that the legislative intent is effectuated and the public interests to be subserved thereby are furthered." *Wing Pawn Shop v. N.M. Tax'n & Revenue Dep't*, 1991-NMCA-024, ¶ 16, 111 N.M. 735, 809 P.2d 649 (internal quotation marks and citation omitted).

## I.    Successor in Business

**{10}** The Department contends that the AHO "correctly found that . . . TVSLR, LLC is a successor in business." TVSLR also does not assert that the AHO's conclusion that TVSLR is a successor in business to VSH was erroneous, despite having contended so below. Nonetheless, because the AHO's successor in business determination guides our analysis of TVSLR as a mere continuation, we pause to address the successor in business framework.

**A.     The Successor in Business Framework**

**{11}**     New Mexico's successor in business framework is established by statute, as well as by regulations promulgated by the Department. *See* § 7-1-61; 3.1.10.16 NMAC. Section 7-1-61(C) requires a person acquiring a business to set aside from the purchase price, or other sources, sufficient funds to cover any remaining tax liability from the previous owner. By its terms, the statute places this duty on a "successor" who acquires the business from the entity liable for the taxes. Section 7-1-61(C) provides:

> If any person liable for any amount of tax from operating a business transfers that business to a successor, the successor shall place in a trust account sufficient money from the purchase price or other source to cover such amount of tax until the secretary or secretary's delegate issues a certificate stating that no amount is due, or the successor shall pay over the amount due to the department upon proper demand for, or assessment of, that amount due by the secretary.

**{12}**     The Department considers eight factors to determine whether a business is a successor:

> (1)     Has a sale and purchase of a major part of the materials, supplies, equipment, merchandise or other inventory of a business enterprise occurred between a transferor and a transferee in a single or limited number of transactions?
>
> (2)     Was a transfer not in the ordinary course of the transferor's business?
>
> (3)     Was a substantial part of both equipment and inventories transferred?
>
> (4)     Was a substantial portion of the business enterprise that had been conducted by the transferor continued by the transferee?
>
> (5)     By express or implied agreement did the transferor's goodwill follow the transfer of the business properties?
>
> (6)     Were uncompleted sales, service or lease contracts of the transferor honored by the transferee?
>
> (7)     Was unpaid indebtedness to suppliers, utility companies, service contractors, landlords or employees of the transferor paid by the transferee?
>
> (8)     Was there an agreement precluding the transferor from engaging in a competing business to that which was transferred?

3.1.10.16(A) NMAC. No single factor is determinative; however, the presence of one of these factors permits the Department to presume that the business is a successor. *See* 3.1.10.16(B) NMAC ("If one or more of the indicia mentioned above are present, the [Department] may presume that ownership of a business enterprise has transferred to a successor in business.").

**{13}** In addition to these factors, the regulations provide a definition of successor. " '[S]uccessor' means any transferee of a business or property of a business" and "may include a business that is a mere continuation of the predecessor . . . and any business that assumes the liabilities of the predecessor." 3.1.10.16(F)(2) NMAC. "Implicit in the regulation's definition of successor is the notion that the future intent of a transferee of a business, once it has received the business, is an important aspect of determining whether it is a successor." *Hi-Country Buick GMC, Inc. v. N.M. Tax'n & Revenue Dep't*, 2016-NMCA-027, ¶ 17, 367 P.3d 862. "The distinguishing feature is . . . whether the entity acquiring the business intends to retain and operate the business." *Id.* As Judge Sutin noted in *Sterling Title Company of Taos v. Commissioner of Revenue*, "the primary purpose of the [successor in business framework is] to make tangible and intangible property security for payment of the tax. The [L]egislature intended this to protect . . . the public against successors who did not withhold an amount sufficient to pay the tax owned by delinquent taxpayers. 1973-NMCA-086, ¶ 23, 85 N.M. 279, 511 P.2d 765 (Sutin J., specially concurring).

## B.    The AHO's Successor in Business Determination

**{14}** Applying the successor in business framework, the AHO determined that six of the factors under 3.1.10.16(B) "weigh[ed] in the Department's favor" and concluded that TVSLR was VSH's successor in business.[1] Regarding the first factor—"whether a sale and purchase of a major part of the materials, supplies, equipment, merchandise or other inventory . . . occurred[,]" 3.1.10.16(A)(1) NMAC, the AHO reasoned that "neither a sale nor purchase occurred between VSH . . . and [TVSLR]"; therefore, this factor weighed in favor of TVSLR. The AHO noted that Kimberly Baird testified that TVSLR retained property valued at $32,768.86, comprised of $12,400 in furniture and equipment and $20,368.86 in alcoholic beverages and food products. Turning to the second factor—whether transfer of ownership was in the ordinary course of VSH's business—the AHO explained that since TVSLR "already owned a substantial portion of the property on the premises," this factor considers only property transferred by VSH to TVSLR. However, because such transfer "is not in the ordinary course of operating a restaurant, this factor weighs in favor of the Department." Addressing factor three— whether a substantial part of VSH's equipment and inventory were transferred to TVSLR—the AHO concluded this factor weighs in favor of the Department because $12,400 of equipment and $20,368.86 of food and beverage products included all VSH's inventory at the time of the transfer. The AHO noted that the equipment transferred to TVSLR upon VSH's eviction, however, did not represent a substantial part

---

[1]While TVSLR does not challenge the determination that it is a successor in business to VSH on appeal, we briefly outline the bases relied on by the AHO in making this determination as that analysis is relevant to aspects of the determination regarding whether TVSLR is additionally a "mere continuation" of VSH.

of the equipment transferred when compared to equipment already owned by TVSLR and utilized by VSH during its tenancy.

**{15}** Addressing the fourth factor—whether a substantial portion of the business conducted by VSH continued to be conducted by TVSLR—the AHO determined that a substantial portion of the business conducted by VSH was continued by TVSLR. As to the fifth factor—whether the transferor's goodwill followed the transfer of ownership—the AHO noted that the circumstances surrounding VSH's failure suggest that it had no goodwill to transfer.[2] Regarding the sixth factor—whether uncompleted sales, service of lease contracts were completed by the transferee—the AHO explained "although [TVSLR] opened new credit accounts with vend[o]rs and suppliers . . . it relied on the prior history of VSH . . . in representing that it had [eleven]-years prior experience in the operation of restaurants, and it made efforts to maintain relationships with VSH['s] . . . vendors and suppliers." Thus, the AHO concluded that this factor weighed slightly in favor of the Department.

**{16}** Regarding the seventh factor—whether TVSLR satisfied indebtedness to suppliers, utility companies, service contractors, landlords or employees of VSH—the AHO noted that as a requirement of the transfer, TVSLR was required to pay vendors and suppliers under conditions that had been imposed on VSH. Thus, this factor weighed in favor of the Department. Turning to the final factor—whether there was an agreement precluding VSH from competing—because there was no such agreement in the record, this factor weighed in favor of TVSLR. Because six factors weighed in favor of the Department, the AHO concluded that the Department's successor in business presumption was correct, and the Department established that TVSLR "incurred liability for the tax obligations of VSH . . . as its successor in business."

## II.     Mere Continuation

**{17}** The issue on appeal is whether the AHO correctly determined that TVSLR is not also, in addition to being a successor in business, a "mere continuation" of VSH under NMSA 1978, Section 7-1-63(C)(2) (1997). If such is the case, TVSLR would be liable for the full amount as assessed by the Department.

**{18}** NMSA 1978, Section 7-1-63(C) provides:

> A successor may discharge an assessment made pursuant to this section by paying to the department the full value of the transferred tangible and intangible property. The successor shall remain liable for the amount assessed, however, until the amount is paid if:

---

2Although the successor in business issue is not before us today, we disagree with the AHO regarding its conclusion as to the transfer of goodwill. Contrary to the AHO's reasoning, it is evident that TVSLR benefitted by the goodwill established by VSH—including relying on and keeping the "Vernon" name. Evidence of such transfer of goodwill is also observed by vendors and suppliers' reliance on their prior business dealings with VSH in agreeing to continue supplying TVSLR.

      (1)     the business has been transferred to evade or defeat any tax;

      (2)     the transfer of the business amounts to a de facto merger, consolidation, or *mere continuation* of the transferor's business; or

      (3)     the successor has assumed liability.

(Emphasis added.)

**{19}** Under 3.1.10.16(F)(1) NMAC, " 'mere continuation' is determined by the 'substantial continuity test' . . . addressing whether the successor maintains the same business with the same employees doing the same jobs under the same supervisors, work conditions and production process and produces the same product for the same customers." In addition to the substantial continuity test provided by 3.1.10.16 NMAC, our Supreme Court has supplemented the substantial continuity test with additional factors, explaining that, "[g]enerally, a continuation of the transferor corporation occurs where there is (1) a continuity of directors, officers, and shareholders; (2) continued existence of only one corporation after the sale of the assets; and (3) inadequate consideration for the sale of the assets." *Garcia v. Coe Mfg. Co.*, 1997-NMSC-013, ¶ 13, 123 N.M. 34, 933 P.2d 243 (citing *McCarthy v. Litton Indus., Inc.*, 570 N.E. 2d 1008, 1012) (explaining that "the imposition of liability on the [successor] is justified on the theory that, in substance if not in form, the purchasing corporation is the same company as the selling corporation")).

## A.    Michael Baird Was a Member of TVSLR

**{20}** The AHO ultimately determined that because TVSLR is not a mere continuation of VSH, it is only liable for the value of the assets transferred. The AHO reasoned that, "[a]lthough there was undisputed evidence that Mr. Michael Baird and Mr. Keith Baird were members of [TVSLR], the evidence was also decisive that Michael Baird was a member in name alone." Additionally, the AHO noted that Michael Baird did not make any financial contribution to TVSLR, nor was he a manager of the LLC. Because the AHO determined that Michael Baird "was never [TVSLR's] manager, and Mr. Keith Baird was never affiliated with VSH," she determined that the record was insufficient to establish continuity of directors, officers and shareholders under *Garcia*.

**{21}** We note that neither the AHO nor TVSLR provide or cite to applicable case law establishing that a member of an LLC may be a "member in name only," such that there cannot be a continuation of such members. Our own research reveals that, "managers designated by or in accordance with the articles of organization and operating agreement shall have exclusive power to make all decisions . . . that are not specifically reserved to the members by the Limited Liability Company Act." NMSA 1978, § 53-19-15(B)(4) (1993). Moreover, even if our case law supported a classification of LLC members in name only—meaning they played no ownership role or exercised no power

or authority as to the entity to which they were otherwise named—our review of the record does not support that such a classification is applicable to Michael Baird.

**{22}** While the AHO was "[m]ost persua[ded]" by the "extremely credible testimony of Mr. Keith Baird" regarding his son's nominal role as a member of TVSLR, and assuming without deciding that such a distinction in categories of members exists for purposes of the instant analysis, our review of the record demonstrates Michael Baird was an active member of TVSLR during his operation and ownership of VSH. The Articles of Organization, filed by Keith Baird in 2005 state as much, declaring that "the management of [TVSLR] is fully vested in the two managers as provided in [TVSLR's] operating agreement." That agreement, signed by both Keith and Michael Baird as members, also provided that "[a]ll members shall have equal vote, notwithstanding their relative capital contributions."[3] Indeed, Michael Baird's authority to conduct business on behalf of TVSLR is best demonstrated by business he in fact personally conducted, for example, by a 2009 mortgage for $176,000, signed solely by Michael Baird on behalf of TVSLR.[4] As well, Michael Baird approached a number of individuals to assume VSH's lease obligations and personally explored other business ventures in an effort to increase the Village Shops' revenue. TVSLR also alluded to Michael Baird's authority as a member of the LLC in its application for credit with McComas Sales Company, noting that it had eleven years of experience in the restaurant business, and that it had previously conducted business with McComas under the name VSH.

**{23}** TVSLR's Articles of Incorporation were formally amended on December 16, 2016, removing Michael Baird as a member and providing that "[t]he management of [TVSLR] is fully vested in one manager" and "shall initially have one member." Although the Department seemingly raises suspicion as to the timing of this action, we will not speculate as to TVSLR's intent in this regard. Rather, we note that according to the LLC's organizing documents, along with the actions taken by Michael and Keith Baird, Michael Baird was a member of TVSLR from 2005 to 2016, including at the time TVSLR sent VSH its formal eviction letter on July 21, 2016. His known actions were considered with his status in this regard, and notably demonstrated his membership in the LLC was active, personally involved, and more than nominal.

---

[3]Although TVSLR asserts that Michael Baird's membership in TVSLR was contingent upon making a capital contribution, we find no evidence of such a condition of membership in the Operating Agreement, nor the Articles of Organization. *See* NMSA 1978, 53-19-2(O) (1999) (defining "operating agreement" as "a written agreement providing for the conduct of the business and affairs of [an LLC])"; *see also Buke, LLC v. Cross Country Auto Sales, LLC*, 2014-NMCA-078, ¶ 25, 331 P.3d 942 (explaining that an "operating agreement" is "a contract reflecting the terms governing the LLC's operations, as agreed to by the LLC members").

[4]Although the hearings below left unresolved Michael Baird's express authority to enter into a mortgage on behalf of TVSLR, that issue is not before us today. From our perspective, the question is whether doing so is an act consistent with substantial continuity of ownership and an exercise of member authority. In any event, TVSLR does not assert on appeal that Michael Baird lacked express or implied authority. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them.").

**B.     TVSLR Is a Mere Continuation of VSH**

**{24}**   Having determined that Michael Baird was a member of TVSLR during his operation of VSH, we now consider whether TVSLR is a "mere continuation" of VSH. The Department asserts that the substantial continuity test under 3.1.10.16 NMAC is met because TVSLR operated the "same business, . . . at the same address, with the same employees doing the same jobs under the same work conditions producing the same product for the same customers." The Department additionally contends that "[e]ven though [TVSLR] was not a 'purchaser' [as contemplated by the factors set forth] in *Garcia*, there is no doubt that [TVSLR's] two members were comprised of [Keith and Michael Baird], and [Michael Baird] was the sole member of VSH[.]" TVSLR answers that two of the three *Garcia* factors—continuity of management and ownership and inadequate consideration—were not satisfied, so TVSLR was not a mere continuation of VSH.

**{25}**   To reiterate, the 3.1.10.16(F)(1) NMAC substantial continuity test considers "whether the successor maintains the same business with the same employees doing the same jobs under the same supervisors, work conditions and production process and produces the same product for the same customers." After evicting VSH, TVSLR continued to operate a steakhouse with a speakeasy theme at the same address. Beginning August 2016, Keith Baird hired Kimberly Baird, the wife of Michael Baird, as "Acting Operations Director." According to Ms. Baird, she retained nearly all employees, including most of the supervisors, previously employed by VSH. Therefore, we agree with the Department that the substantial continuity test under 3.1.10.16(F)(1) NMAC is met.

**{26}**   Turning to the supplemental *Garcia* factors, TVSLR was formed as a two-member LLC. Moreover, we deem it significant that when TVSLR evicted VSH on August 1, 2016, Michael Baird remained a member of TVSLR until its Articles of Organization were formally amended in December 2016. As explained above, Michael Baird's status as a member and manager of TVSLR, and his actions consistent therewith, demonstrate his authority and active involvement in TVSLR. Thus, the first *Garcia* factor is met. *See* 1997-NMSC-013, ¶ 13. As well, the second *Garcia* factor is established by the fact that there remains but one corporation after the transfer of assets—TVSLR. Considering the final factor of *Garcia*, we remain persuaded that TVSLR is a mere continuation of VSH. Because of VSH's eviction and subsequent bankruptcy, there was no "sale of assets" that could be deemed inadequate under *Garcia*. Nonetheless, the record demonstrates that in assuming operation of the restaurant and evicting VSH, TVSLR gained possession of all the products and equipment used by VSH. During VSH's tenancy at the restaurant, TVSLR continued to own all the equipment and furnishings on the premises and permitted VSH to use the equipment at no additional charge. VSH additionally acquired a piano, new convection oven, chairs, an espresso machine, tableware and tables for the sum of $30,491.89, all of which TVSLR assumed. After evicting VSH, TVSLR assumed possession of perishable and non-perishable food items purchased by VSH in value of $9,166.21 and assumed alcohol purchased by VSH with a value of $11,202.65.

**{27}**  Considering the intermingled relationships of the two LLCs, as well as TVSLR's continued relationships with VSH's suppliers and employees, to hold that TVSLR is not a mere continuation of VSH would be contrary to legislative intent. *See Baker v. Hedstrom,* 2013-NMSC-043, ¶ 11, 309 P.3d 1047 ("When construing statutes, our guiding principle is to determine and give effect to legislative intent." (internal quotation marks and citation omitted)). We therefore reverse the AHO's contrary determination.

**CONCLUSION**

**{28}**  Because we determine that, in addition to being a successor in business, TVSLR is a mere continuation of VSH, we reverse and remand for further proceedings consistent with this opinion. Although the parties ask us to calculate TVSLR's tax liability under our holding today, we remand as well for this determination.

**{29}  IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**JANE B. YOHALEM, Judge**

**GERALD E. BACA, Judge**