IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:    December 8, 2015

**NO. 33,849**

**HI-COUNTRY BUICK GMC, INC.,**

Protestant-Appellant,

v.

**TAXATION AND REVENUE DEPARTMENT**
**OF THE STATE OF NEW MEXICO,**

Respondent-Appellee.

**APPEAL FROM THE JUNE 2, 2014 DECISION AND ORDER OF**
**THE TAXATION AND REVENUE DEPARTMENT OF THE STATE**
**OF NEW MEXICO**
**Brian VanDenzen, Tax Hearing Officer**

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Zachary L. McCormick
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
Cordelia Friedman, Special Assistant Attorney General
Santa Fe, NM

for Appellee

**FRY, Judge.**

{1}     Appellant Hi-Country Buick GMC, Inc. (Hi-Country) appeals the Taxation and Revenue Department's (TRD) denial of Hi-Country's protest of the TRD's tax assessment. The TRD assessed Hi-Country as a successor in business to High Desert Automotive in the amount of $282,910.98, including penalties and interest. On appeal, Hi-Country argues that (1) the TRD's assessment was deficient; (2) Hi-Country is not a successor in business to High Desert Automotive because an intervening foreclosure of a secured interest in the stock and assets of High Desert Automotive severed Hi-Country's liability for High Desert Automotive's delinquent taxes; and (3) in the event Hi-Country is liable for the taxes, it is not liable for the interest and penalties that also accrued. We conclude that (1) even assuming the TRD's assessment was deficient, any issues with its deficiency were remedied below; (2) because Hi-Country acquired the business from an entity liable for the taxes, it was a successor in business to High Desert Automotive; and (3) successor-in-business tax liability does not include liability for interest and penalties that have accrued on the outstanding tax liability. Accordingly, we affirm in part and reverse in part.

**BACKGROUND**

{2}     The following are the facts found by the TRD's hearing officer. High Desert

Automotive, Basin Acquisition Corporation, and Basin Motor Company (collectively referred to as Desert Automotive in the remainder of this Opinion) owned a number of car dealerships, including Performance Buick and Performance Mazda (Performance dealerships) in Farmington, New Mexico. Desert Automotive was owned equally by husband and wife Jay and Susan Steigleman, and Susan's brother, Bradford Furry. In April 2008, the Steiglemans bought out Furry's interest in the businesses. To complete the sale, the Steiglemans tendered a promissory note to Furry secured, in part, by all shares of stock in Desert Automotive and the corporation's assets.

{3} The Steiglemans' operation of Desert Automotive, however, did not fare well. Of particular importance, the Steiglemans failed to pay Ally Financial, the floor plan financing company for the Performance dealerships' inventory, when they sold vehicles. Although the Steiglemans had contracted with Furry to remove him as a personal guarantor of the floor plan financing agreement when he sold his interest to them, Furry was not removed. Ally Financial therefore made a demand against Furry's personal guaranty for $16,000,000. Ally Financial also initiated an audit of the inventory at the Performance dealerships. As a result of this audit, Ally Financial sought and was granted a preliminary injunction against Desert Automotive and a writ of replevin over the Performance dealerships' inventory. This entitled Ally

Financial to liquidate the assets of the Performance dealerships and effectively terminate the Performance dealerships' franchise agreements. Due in part to these failures, Furry held the Steiglemans in default under the promissory note and took possession of all corporate stock of Desert Automotive.

{4} Once Furry took over operation of Desert Automotive, he enlisted the assistance of Jeff Thomas, president of Hi-Country Chevrolet in nearby Aztec, New Mexico, to delay execution of Ally Financial's writ of replevin. As part of these efforts, Thomas entered into a management agreement with Furry to become the operator of the Performance dealerships.

{5} It is unclear from the hearing officer's findings when the TRD first contacted Performance Buick regarding its tax liability. At some point after Furry reacquired Desert Automotive, however, Performance Buick self-reported its tax liability and entered into a payment plan with the TRD. While Performance Buick ultimately failed to make the required payments, on at least one occasion while Thomas operated the Performance Buick dealership, he reported and paid the dealership's gross receipts tax.

{6} Eventually, Furry and Thomas also entered into negotiations for Thomas to purchase the Performance dealerships. As part of the agreement, Thomas assumed and paid the Performance dealerships' outstanding liabilities to Ally Financial in

order to maintain the inventory. With the eventual approval of General Motors and Ally Financial, Thomas and Furry finalized an asset purchase agreement to transfer the Performance dealerships to Hi-Country.

{7}     Shortly after the closing of the asset purchase agreement, the TRD determined Hi-Country to be a successor in business to Desert Automotive. Accordingly, the TRD assessed Hi-Country for Desert Automotive's back taxes, penalties, and interest in regard to the Performance Buick dealership in the amount of $282,910.98. Hi-Country protested the TRD's assessment. Following a hearing, the TRD's hearing officer denied Hi-Country's protest. Hi-Country now appeals.

**DISCUSSION**

**Standard of Review**

{8}     "Administrative decisions are reviewed under an administrative standard of review." *Paule v. Santa Fe Cty. Bd. of Cty. Comm'rs*, 2005-NMSC-021, ¶ 26, 138 N.M. 82, 117 P.3d 240. "Under this standard of review, reviewing courts are limited to determining whether the administrative agency acted fraudulently, arbitrarily or capriciously; whether the agency's decision is supported by substantial evidence; or whether the agency acted in accordance with law." *Id.* To the extent the issues raised by Hi-Country necessitate statutory construction, our review is de novo. *City of Eunice v. N.M. Taxation & Revenue Dep't*, 2014-NMCA-085, ¶ 8, 331 P.3d 986.

**Sufficiency of the TRD's Tax Assessment**

{9}    Hi-Country argues that the tax assessment was ineffective because the TRD failed to identify the nature of the taxes involved. The basis of Hi-Country's argument is that the assessment in this case, while including the amount of the tax liability and stating that it arose as a result of Hi-Country's status as a successor in business, did not state that the tax liability was for unpaid gross receipts and withholding taxes. Hi-Country contends that in the absence of this specific designation, the assessment was not effective, no tax liability arose, and therefore its tax liability must be invalidated.

{10}    NMSA 1978, Section 7-1-63(A) (1997) states that if a successor has not paid the former owner's tax liability within thirty days of the business being transferred, the TRD "shall assess the successor the amount due." NMSA 1978, Section 7-1-17(B)(2) (2007) states that an assessment is effective

> when a document denominated "notice of assessment of taxes", issued in the name of the secretary, is mailed or delivered in person to the taxpayer against whom the liability for tax is asserted, stating the nature and amount of the taxes assertedly owed by the taxpayer to the state, demanding of the taxpayer the immediate payment of the taxes and briefly informing the taxpayer of the remedies available to the taxpayer[.]

The statute does not define "nature," but Hi-Country contends that it refers to the specific tax program, such as gross receipts tax.

5

{11}    We disagree with Hi-Country. Even assuming, without deciding, that the statute requires specificity as argued by Hi-Country, the assessment at issue did specifically notify Hi-Country regarding the nature of its tax liability—successor-in-business liability from its predecessor, Performance Buick. Hi-Country also knew of the underlying gross receipts and withholding tax liability of Performance Buick. Multiple communications took place between the TRD and both Furry and Hi-Country regarding the specific nature of the underlying Performance Buick taxes being assessed against Hi-Country before it filed its protest. Furthermore, the Hi-Country assessment specifically noted the CRS number used by Thomas, while acting pursuant to a management agreement pending the sale of the Performance dealerships, to report and pay Performance Buick's gross receipts taxes on at least one occasion. Given these undisputed factual circumstances, Hi-Country was given proper notice of the nature of its successor-in-business tax liability pursuant to Section 7–1-17(B)(2) and also provided the information regarding Performance Buick's gross receipts and withholding tax liability that created this successor liability. Any failure to include the words "withholding tax" or "gross receipts tax" in the Hi-Country assessment as a successor in business neither prejudiced Hi-Country nor detracted from the nature of its specifically stated liability as a successor in business. Hi-Country went into the protest hearing fully apprised of the underlying

6

nature and amount of Performance Buick's alleged tax liability that it would be obliged to pay as a sucessor. Accordingly, we conclude that any prejudice that potentially existed would be harmless and an inappropriate basis on which to invalidate Hi-Country's successor-in-business tax liability. *See Jewell v. Seidenberg*, 1970-NMSC-139, ¶ 9, 82 N.M. 120, 477 P.2d 296 (stating that this Court does not "correct harmless error" and that appellant "must show that substantial rights have been harmed to obtain reversible error"); *State v. Zamora*, 1978-NMCA-017, ¶ 17, 91 N.M. 470, 575 P.2d 1355 (defining "harmless error" as one that is "not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case" (internal quotation marks and citation omitted)).

**Hi-Country Failed to Rebut the Presumption That It Was a Successor in Business**

{12}    Hi-Country argues that it is not liable for Desert Automotive's tax liability because it is not a successor in business to Desert Automotive. The basis of Hi-Country's argument is that the successor-in-business statutes and the TRD's regulations require the successor to acquire the business from the entity that is liable for the taxes. Hi-Country argues that because it purchased the business from Furry, who in turn acquired the business by declaring the Steiglemans to be in default on the promissory note, it did not purchase the business from an entity liable for the taxes. The issue then is whether Furry was liable for the taxes when he sold the business to

7

Hi-Country. We conclude that he was. We therefore do not reach the issue of whether successor-in-business tax liability can effectively attach to an eventual successor when the successor purchases the business from an intervening entity that was not liable for the taxes pursuant to the statutes and regulations.

{13}     NMSA 1978, Section 7-1-61(C) (1997) requires a person acquiring a business to set aside from the purchase price, or other sources, sufficient funds to cover any remaining tax liability from the previous owner. By its terms, the statute places this duty on a "successor" who acquires the business from the entity liable for the taxes. The statute states:

> If any person liable for any amount of tax from operating a business transfers that business to a successor the successor shall place in a trust account sufficient money from the purchase price or other source to cover such amount of tax until the secretary or secretary's delegate issues a certificate stating that no amount is due, or the successor shall pay over the amount due to the department upon proper demand for, or assessment of, that amount due by the secretary.

Section 7-1-61(C). As noted in other jurisdictions, the policy behind placing this duty on the successor "is to secure collection of taxes by imposing derivative liability on purchasers of a business who are generally in a better financial position to collect or pay the tax from the sale price than the seller quitting the business." *Bates v. Dir. of Revenue*, 691 S.W.2d 273, 276 (Mo. 1985). Apart from the successor's duty to set aside funds to cover any potential tax liability under Section 7-1-61(C), if any tax

8

liability remains once the business is transferred, the successor has thirty days to pay the tax liability remaining from the predecessor owner. Section 7-1-63(A).

{14}     The TRD has promulgated regulations defining the term "successor" and listing factors the TRD uses in determining whether a business is a successor. *See* 3.1.10.16(A) NMAC. The eight factors used by the TRD to determine whether a business is a successor are:

    (1)  Has a sale and purchase of a major part of the materials, supplies, equipment, merchandise or other inventory of a business enterprise occurred between a transferor and a transferee in a single or limited number of transactions?

    (2)  Was a transfer not in the ordinary course of the transferor's business?

    (3)  Was a substantial part of both equipment and inventories transferred?

    (4)  Was a substantial portion of the business enterprise that had been conducted by the transferor continued by the transferee?

    (5)  By express or implied agreement did the transferor's goodwill follow the transfer of the business properties?

    (6)  Were uncompleted sales, service or lease contracts of the transferor honored by the transferee?

    (7)  Was unpaid indebtedness to suppliers, utility companies, service contractors, landlords or employees of the transferor paid by the transferee?

    (8)  Was there an agreement precluding the transferor from engaging in a competing business to that which was transferred?

*Id*. No single factor is determinative; however, the presence of one of these factors permits the TRD to presume that the business is a successor. "If one or more of the indicia mentioned above are present, the secretary or secretary's delegate may

presume that ownership of a business enterprise has transferred to a successor in business." 3.1.10.16(B) NMAC.

{15} In addition to these factors, the regulation provides a definition of successor. The regulation states that " 'successor' means any transferee of a business or property of a business, except to the extent it would be materially inconsistent with the rights of secured creditors that have perfected security interests or other perfected liens on the business or property of the business." 3.1.10.16(F)(2) NMAC. According to the definition, this "may include a business that is a mere continuation of the predecessor after those connected with the business [reacquire] at a foreclosure sale property used in the predecessor's business, a business that is acquired and run for [an] indefinite period by a creditor of the predecessor and any business that assumes the liabilities of the predecessor." *Id.* However, a successor "does not include a disinterested third party who purchases property at a commercially reasonable foreclosure sale, a bank or other financial institution or government that acquires and operates the business for a limited period of time in order to protect its collateral for eventual resale in a commercially reasonable manner or a franchisor that cancels a franchise agreement due to material default by the franchisee[.]" *Id.*

{16} In this case, the hearing officer determined that seven of the eight factors were present. The TRD therefore established the presumption that Hi-Country was a

successor in business. Hi-Country does not challenge the findings supporting this conclusion on appeal. Instead, Hi-Country contends that because Furry reacquired the business by declaring the Steiglemans in default on the promissory note, he is not a successor under the exemption in the regulation for a "bank or other financial institution or government that acquires and operates a business for a limited period of time in order to protect its collateral for eventual resale in a commercially reasonable manner." 3.1.10.16(F)(2) NMAC.

{17}     The problem in Hi-Country's argument is that under the plain language of the regulation, Furry is not a bank, financial institution, or government. Anticipating this issue, Hi-Country argues that narrowly construing this exemption unfairly denies individual creditors rights that are granted to those entities specifically listed in the regulation's definition. We are unpersuaded by Hi-Country's argument. Implicit in the regulation's definition of successor is the notion that the future intent of a transferee of a business, once it has received the business, is an important aspect of determining whether it is a successor. For instance, the exemption for banks, financial institutions, and governments states that the exemption applies to one who "acquires and operates a business *for a limited period of time* in order to protect its collateral[.]" 3.1.10.16(F)(2) NMAC (emphasis added). However, the definition also states that a successor may include "a business that is acquired and run for [an] *indefinite period*

by a creditor of the predecessor." *Id.* (emphasis added). The distinguishing feature is therefore whether the entity acquiring the business intends to retain and operate the business. Thus, it is reasonable for the TRD to extend to financial and governmental institutions an exemption from successor-in-business tax liability when they acquire the business in order to protect their collateral because their lack of intent to indefinitely operate the business can be fairly presumed. Accordingly, we see no reason to extend the plain language of the regulation to cover Furry's circumstances.

{18}     In reaching this conclusion, we emphasize that we do not read the regulation's definition of successor to completely foreclose successor-in-business tax liability from also attaching to banks, financial institutions, or governmental institutions. Instead, the thrust of the definition is to determine, at least on this point, whether the particular party, either as an individual creditor or a financial institution, intends to indefinitely operate the business. To the extent that it does, it is potentially liable for the predecessor's tax liability. We say "potentially" because just as important as whether or not a particular transferee fits the definition in 3.1.10.16(F)(2) NMAC, is whether any one of the eight factors is present. In this case, seven of those factors were present and created a strong presumption that Hi-Country was a successor in business. Because Hi-Country failed to rebut this presumption, we affirm the hearing officer's decision on this issue.

12

**Successor in Business Tax Liability Does Not Include Penalties and Interest**

{19}    Hi-Country argues that any tax it may owe as Desert Automotive's successor in business does not include the penalties and interest incurred by Desert Automotive on that tax because the definition of "tax" under Section 7-1-61(A) does not provide for the inclusion of penalties and interest. We agree.

{20}    Section 7-1-61(A) defines "tax" as "the amount of tax due imposed by [the] provisions of the taxes or tax acts set forth in Subsections A and B of [NMSA 1978,] Section 7-1-2 [(2007)], except the Income Tax Act[.]" Subsections (A) and (B) list at least thirty-five "taxes [and] tax acts as they now exist or may hereafter be amended[.]" Two of these tax acts are pertinent to this appeal: the Withholding Tax Act, NMSA 1978, §§ 7-3-1 to -13 (1961, as amended through 2010), and the Gross Receipts Tax Act, NMSA 1978, §§ 7-9-1 to -114 (1966, as amended through 2014). *See* § 7-1-2(A)(2), (4). The only penalty found within the provisions of the Withholding Tax Act is a $50 penalty for "[a]ny employer or payor required to file the quarterly withholding information return who fails to do so by the due date or to file the return in accordance with Subsection C of this section[.]" Section 7-3-13(D). The Withholding Tax Act does not contain any provision concerning interest on unpaid withholding tax. And the Gross Receipts Tax Act does not provide for penalties or interest on unpaid gross receipts tax. The penalties and interest that

normally accrue on unpaid withholding and gross receipts taxes are authorized against a taxpayer under other separate provisions of New Mexico's tax code. *See, e.g.*, NMSA 1978, § 7-1-69(A) (2007) (providing for a civil penalty for the failure to pay tax); NMSA 1978, § 7-1-67(A) (2013) (providing for interest on overdue taxes). In this case, Section 7-1-61(A), which specifically deals with the narrow circumstances involving successor-in-business tax liability, limits the "tax" that can be collected from Hi-Country to "the amount of tax imposed by the provisions" of the Withholding Tax Act and the Gross Receipts Tax Act. The provisions of these two specific acts do not impose penalties or interest—except for the $50 penalty for failing to timely file quarterly withholding information. *See* § 7-3-13(D). And the Withholding Tax Act does not refer to that $50 penalty as a "tax." Therefore, Section 7-1-61(A) does not allow TRD to collect from Hi-Country the penalties and interest that accrued on High Desert Automotive's account.

{21}     We reject TRD's argument that it may collect from Hi-Country the penalties and interest that accrued on Desert Automotive's account based on the following definition of "tax" found in NMSA 1978, Section 7-1-3(Y) (2015):

> the total amount of each tax imposed and required to be paid, withheld and paid or collected and paid under provision of any law made subject to administration and enforcement according to the provisions of the Tax Administration Act and, *unless the context otherwise requires, includes the amount of any interest or civil penalty relating thereto*[.]

(Emphasis added.) In enacting Section 7-1-61(A), the Legislature chose to define "tax" differently than it did in Section 7-1-3(Y). *See Luboyeski v. Hill*, 1994-NMSC-032, ¶ 10, 117 N.M. 380, 872 P.2d 353 (addressing legislative intent and recognizing that the Legislature is presumed to be aware and informed regarding existing laws at the time a statute is enacted and it would not intend to create any inconsistency within the law). Section 7-1-61(A)'s definition of "tax" is more narrow than that in Section 7-1-3(Y) as it specifically limits the "context" of the taxes that can be collected from a successor in business to those found within the specific provisions of the separately stated tax acts contained in our tax code, rather than the general administrative provisions of our tax code providing for an addition of penalties and interest. *See State ex rel. Schwartz v. Sanchez*, 1997-NMSC-021, ¶¶ 7-8, 123 N.M. 165, 936 P.2d 344 (applying the fundamental principle of statutory construction favoring the application of a more specific statutory definition over a general definition that covers the same subject matter). Therefore, we conclude that Section 7-1-3(Y)'s general definition of tax does not apply in the more specific context of defining successor-in-business tax liability under Section 7-1-61(A).

{22}     Our conclusion is also consistent with sound policy considerations. *See CAVU Co. v. Martinez*, 2014-NMSC-029, ¶ 13, 332 P.3d 287 (recognizing the application of policy considerations as guidance in the analysis of taxation issues); *Waltom v.*

15

*City of Portales*, 1938-NMSC-022, ¶ 6, 42 N.M. 433, 81 P.2d 58 (same); *see also Hooper v. Bernalillo Cnty. Assessor*, 1984-NMCA-027, ¶ 22, 101 N.M. 172, 679 P.2d 840, *rev'd on other grounds*, 472 U.S. 612 (1985) (recognizing that the Legislature extended a benefit to a specific class of taxpayers that was "rationally related to legitimate state interests"). First, the state's long-term interests are enhanced when a dying business is revived under new ownership with all of its previously accrued taxes paid in full and additional taxes being assessed as the new business moves forward. *See Rodey, Dickason, Sloan, Akin & Robb v. Revenue Div.*, 1988-NMSC-063, ¶ 10, 107 N.M. 399, 759 P.2d 186 (generally recognizing the state's legitimate interest in raising tax revenues for services performed in New Mexico). Second, the interest and penalties remain the liability of the previous business owner and may be collected from that predecessor. Third, the state likely would not benefit from the sale of the business's assets because it would likely stand in line behind a host of secured creditors, leaving little, if any, funds left to pay the accrued taxes. Finally, because penalties and interest are effectively punitive, it is reasonable to limit those liabilities to be paid by the previous business owner who incurred them rather than impose this punishment upon the successor who bore no responsibility for the unpaid taxes. If the Legislature intended to make a successor in business liable for penalties and interest accrued by the previous business owner, it could have easily stated so in Section 7-1-

16

61 or alternatively identified and used Section 7-1-3(Y)'s definition of "tax" that is generally applied in other non-specific contexts under the tax code. Instead, it chose a different and more specific definition of "tax" in the context of successor-in-business liability. As a result, we reverse the hearing officer's ruling that affirmed TRD's assessment of interest and penalties against Hi-Country due to its status as a successor in business.

**CONCLUSION**

{23}    For the foregoing reasons, we affirm the hearing officer's denial of Hi-Country's tax assessment protest as it relates to the successor-in-business gross receipts tax owed, and we reverse the denial with respect to the assessment of interest and penalties.

{24}    **IT IS SO ORDERED.**


_____
                                        **CYNTHIA A. FRY, Judge**


**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**TIMOTHY L. GARCIA, Judge**

17