# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2022-NMCA-048

Filing Date: December 6, 2021

No. A-1-CA-37852

HIGH DESERT RECOVERY, LLC,

       Protestant-Appellant,

v.

NEW MEXICO TAXATION &
REVENUE DEPARTMENT,

       Respondent-Appellee.

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE**
**Dee Dee Hoxie, Hearing Officer**

Sanchez, Mowrer & Desiderio, P.C.
Robert J. Desiderio
Isaac S. Emmanuel
Albuquerque, NM

Betzer, Roybal & Eisenberg, P.C.
Benjamin C. Roybal
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
Cordelia Friedman, Special Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**HANISEE, Chief Judge.**

**{1}**    This appeal concerns the State's effort to collect unpaid gross receipts taxes from High Desert Recovery, LLC (High Desert). High Desert appeals from an Administrative Hearing Officer's (AHO) decision and order (the Order) determining it to be a successor in business, as well as a mere continuation, of West Rock Incorporated

(WRI) and concluding that High Desert is liable for $127,764.92 in back taxes assessed to WRI. We affirm.

## BACKGROUND

{2}	WRI was formed in 1995 as a three-member LLC. Although not a shareholder himself, Daniel Brown acted as a board member, the president, and the manager of WRI's daily operations. Brown additionally owned and leased a facility to WRI located at an address on Franciscan Street NE in Albuquerque, New Mexico, at which WRI conducted its automobile repossession business.

{3}	In 2008, the Taxation and Revenue Department (the Department) assessed WRI for unpaid gross receipts taxes and interest for approximately $270,000. WRI protested the assessment, and an order denying the protest was filed in April 2013. On May 31, 2013, Brown formed High Desert as a single-member LLC, providing his personal P.O. Box address as High Desert's mailing address and listing an address on Cherry Hills Road in Albuquerque, New Mexico as its "place of business." On October 16 and 17, 2013, High Desert purchased two new tow trucks and provided WRI's Franciscan Street NE address in its title application. On October 25, 2013, High Desert applied for a warrant application that would allow it to perform repossessions using the Cherry Hills Road address. The application listed ownership of a single tow truck and identified two employees—Brown and a driver who was still employed by WRI.

{4}	Upon approval of its application, High Desert purchased an additional tow truck from WRI for $700, the fair market value of which was later determined by the Department of Motor Vehicles (MVD) to be $14,720, for purposes of calculating excise tax from the transfer. In this transaction, as well as the related title application and registration, High Desert provided the Cherry Hills Road address. High Desert also used WRI's liability insurance policy number to register its newly acquired tow trucks. In March 2014, Brown terminated WRI's lease on the Franciscan Street NE address and WRI passed a resolution to dissolve. Later that same year, High Desert filed a change of address with the transportation division, indicating that it would begin operating from the Franciscan Street NE address. As was the case with WRI, Brown also leased the Franciscan Street NE property to High Desert.

{5}	On November 28, 2016, the Department assessed High Desert, as a successor in business to and a mere continuation of WRI, for a total of $271,359.77, of which $143,594.85 was interest. The Department ultimately abated the interest portion. High Desert protested the assessment, which the AHO denied in full. This appeal followed.

## DISCUSSION

{6}	On appeal, High Desert asserts that (1) the AHO erred in determining that High Desert is a successor in business to WRI; (2) the AHO erred in determining that High Desert is a mere continuation of WRI; and (3) High Desert is entitled to recover attorney fees because the Department's position contradicts binding precedent.

**Standard of Review**

**{7}** Since the issue presented is one of statutory interpretation regarding the meaning of NMSA 1978, Section 7-1-61 (2017), we review the Order de novo. *See A&W Rests., Inc. v. Tax'n & Revenue Dep't*, 2018-NMCA-069, ¶ 6, 429 P.3d 976 ("The meaning of language used in a statute is a question of law that we review de novo." (internal quotation marks and citation omitted)). While we are not bound by the AHO's interpretation of the statute, this Court will set aside the Order only if it is: "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." NMSA 1978, § 7-1-25(C) (2015); *see Stockton v. N.M. Tax'n & Revenue Dep't*, 2007-NMCA-071, ¶ 8, 141 N.M. 860, 161 P.3d 905 (same) (internal quotation marks and citation omitted).

**{8}** "Our primary goal [in interpreting a statute] is to give effect to the intent of the Legislature." *Sacred Garden, Inc. v. N.M. Tax'n & Revenue Dep't*, 2021-NMCA-038, ¶ 5, 495 P.3d 576 (alteration, internal quotation marks, and citation omitted), *cert. granted*, 2021-NMCERT-___ (No. S-1-SC-38164, Mar. 29, 2021). "We discern legislative intent by first looking at the plain meaning of the language of the statute, [and] reading the provisions together to produce a harmonious whole." *Id*. (omission, internal quotation marks, and citation omitted).

**{9}** "There is a presumption that all persons engaging in business in New Mexico are subject to gross receipts tax." *TPL, Inc. v. N.M. Tax'n & Revenue Dep't*, 2003-NMSC-007, ¶ 9, 133 N.M. 447, 64 P.3d 474; *see* NMSA 1978, § 7-9-5(A) (2019) ("To prevent evasion of the gross receipts tax and to aid in its administration, it is presumed that all receipts of a person engaging in business are subject to the gross receipts tax."). The Department's assessment of taxes or demand for payment "is presumed to be correct." NMSA 1978, § 7-1-17(C) (2007). Because the Department has the authority to enact regulations that interpret statutes, those regulations similarly carry a presumption that they are a "proper implementation of the provisions of the laws[.]" NMSA 1978, § 9-11-6.2(G) (2015); *see Chevron U.S.A., Inc. v. State ex rel. Tax'n & Revenue Dep't*, 2006-NMCA-050, ¶ 16, 139 N.M. 498, 134 P.3d 785 ("Agency regulations that interpret statutes and are promulgated under statutory authority are presumed proper[.]"). Nevertheless, "[a] tax statute must also be given a fair, unbiased, and reasonable construction, without favor or prejudice to either the taxpayer or the [s]tate, to the end that the legislative intent is effectuated and the public interests to be subserved thereby are furthered." *Wing Pawn Shop v. N.M. Tax'n & Revenue Dep't*, 1991-NMCA-024, ¶ 16, 111 N.M. 735, 809 P.2d 649 (internal quotation marks and citation omitted).

**I.      Successor in Business**

**{10}** High Desert first argues that the AHO misapplied 3.1.10.16(A) NMAC, which provides the factors used to determine whether a given entity is a successor in business, wrongly concluding that High Desert is a successor in business to WRI. The Department answers that the AHO properly determined that High Desert "became a successor in business as a matter of law" when it "took [WRI's] office equipment, liability

insurance policy and tow truck to provide the same services using the same equipment with the same employees to the same customers at the same business location[.]"

## A.    The Successor in Business Framework

**{11}**    New Mexico's successor in business framework is established by statute, as well as by regulations promulgated by the Department. *See* § 7-1-61; 3.1.10.16 NMAC. Section 7-1-61(C) requires a person acquiring a business to set aside from the purchase price, or other sources, sufficient funds to cover any remaining tax liability from the previous owner. By its terms, the statute places this duty on a "successor" who acquires the business from the entity liable for the taxes. Section 7-1-61(C) provides:

> If any person liable for any amount of tax from operating a business transfers that business to a successor, the successor shall place in a trust account sufficient money from the purchase price or other source to cover such amount of tax until the secretary or secretary's delegate issues a certificate stating that no amount is due, or the successor shall pay over the amount due to the department upon proper demand for, or assessment of, that amount due by the secretary.

**{12}**    The Department considers eight factors to determine whether a business is a successor:

> (1)    Has a sale and purchase of a major part of the materials, supplies, equipment, merchandise or other inventory of a business enterprise occurred between a transferor and a transferee in a single or limited number of transactions?
>
> (2)    Was a transfer not in the ordinary course of the transferor's business?
>
> (3)    Was a substantial part of both equipment and inventories transferred?
>
> (4)    Was a substantial portion of the business enterprise that had been conducted by the transferor continued by the transferee?
>
> (5)    By express or implied agreement did the transferor's goodwill follow the transfer of the business properties?
>
> (6)    Were uncompleted sales, service or lease contracts of the transferor honored by the transferee?
>
> (7)    Was unpaid indebtedness to suppliers, utility companies, service contractors, landlords or employees of the transferor paid by the transferee?

(8)     Was there an agreement precluding the transferor from engaging in a competing business to that which was transferred?

3.1.10.16(A) NMAC. No single factor is determinative; however, the presence of one of these factors permits the Department to presume that the business is a successor. *See* 3.1.10.16(B) NMAC ("If one or more of the indicia mentioned above are present, the [Department] may presume that ownership of a business enterprise has transferred to a successor in business.").

{13}   In addition to these factors, the regulations provide a definition of successor. " '[S]uccessor' means any transferee of a business or property of a business" and "may include a business that is a mere continuation of the predecessor . . . and any business that assumes the liabilities of the predecessor." 3.1.10.16(F)(2) NMAC. "Implicit in the regulation's definition of successor is the notion that the future intent of a transferee of a business, once it has received the business, is an important aspect of determining whether it is a successor." *Hi-Country Buick GMC, Inc. v. N.M. Tax'n & Revenue Dep't*, 2016-NMCA-027, ¶ 17, 367 P.3d 862. "The distinguishing feature is . . . whether the entity acquiring the business intends to retain and operate the business." *Id.* As Judge Sutin noted in *Sterling Title Company of Taos v. Commissioner of Revenue*, "the primary purpose of the [successor in business framework is] to make tangible and intangible property security for payment of the tax. The [L]egislature intended this to protect . . . the public against successors who did not withhold an amount sufficient to pay the tax owned by delinquent taxpayers." 1973-NMCA-086, ¶ 23, 85 N.M. 279, 511 P.2d 765 (Sutin, J., specially concurring).

## B.     High Desert Is a Successor in Business

{14}   High Desert argues that the first three factors of 3.1.10.16(B) NMAC are "intended to capture the sale of a business via an asset sale" and "require transfer of a 'major' or 'substantial' portion of the transferor's assets." The AHO reasoned that because WRI "abandoned its property . . . and [High Desert] took possession of it[,]" there was "clearly a transfer of tangible property[.]" High Desert contends that merely storing the assets at its facility does not equal possession, and "taking possession of a defunct corporation's assets does not constitute legal transfer of those assets."

{15}   As an initial general matter, the word "transfer" has been deemed to include transfers of assets without a formal sale. *See, e.g.*, 3.1.10.16.(F)(3) NMAC (defining "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with the property of a business"); *Sterling Title Co.*, 1973-NMCA-086, ¶ 25 (explaining that the term " 'business changes hands' . . . is broad enough to include the personalty as security even though a taxpayer quits business, sells out, exchanges, or otherwise disposes of his business or his stock of goods"); *see Black's Law Dictionary* (11th ed. 2019) (defining a "transfer" as "embrac[ing] every method . . . of disposing of or parting with property or with an interest in property").

**{16}** Nonetheless, regarding the first factor, although we determine that "a major part of the materials, supplies, equipment, merchandise or other inventory," 3.1.10.16(A)(1) NMAC, was transferred from WRI to High Desert, because this factor specifically contemplates whether a "sale and purchase" of such assets occurred, and as the Department concedes "admittedly there was no sale," this factor does not weigh in favor of the Department.

**{17}** Turning to the second factor—whether the transfer was not in the ordinary course of the transferor's business—WRI was a repossession business and was not in the business of selling tow trucks or storing equipment. This factor therefore weighs in favor of the Department.

**{18}** The third factor—whether a substantial part of the equipment and inventories were transferred—we conclude also weighs in favor of the Department. Although WRI's dissolution plan required that assets of value be liquidated and assets of no value be abandoned or donated, all of WRI's equipment and inventory continued to be held at the Franciscan Street NE address, the property owned by Brown, which he leased first to WRI and then to High Desert. High Desert asserts that even if it "took possession of WRI's remaining property, that does not constitute transfer of such property" to High Desert. We disagree. Although there was no formal transfer of assets, High Desert demonstrated its possession of WRI's assets by continuing to store them at the Franciscan Street NE address and continuing to utilize them for actions related to High Desert's repossession business. For instance, High Desert used WRI's facsimile machine to submit title application materials and relied on WRI's liability insurance policy to register its newly acquired tow trucks. High Desert contends that it had possession of such equipment for the purpose of giving it to the Department; however, High Desert provides no statutory authority and no agreement between itself and the Department indicating that the Department agreed to accept such assets. *See Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)).

**{19}** Similarly, the fourth factor—whether a substantial portion of the business conducted by WRI continued to be conducted by High Desert—also weighs in favor of the Department. WRI and High Desert are repossession businesses who operated at the same location on Franciscan Street NE, and High Desert continued to perform repossessions for many of WRI's clients. Which leads to the fifth factor—whether by express or implied agreement WRI's goodwill followed the transfer. Indeed, it did. Not only did High Desert continue to do business for WRI's clients, but it retained each of WRI's employees. Even, Brown—an officer and manager of both LLCs—testified that WRI and High Desert's reputations were "inextricable tied" to his own personal reputation.[1]

---

[1]Because neither High Desert nor the Department contends that the AHO's determination that 3.1.10.16(A) NMAC factors six through eight weigh against finding that High Desert is a successor in business are erroneous, these findings are binding on appeal. *See Lopez v. N.M. Dep't of Tax'n &*

**{20}** Because three factors under 3.1.10.16(A) NMAC weigh in favor of High Desert being categorized as a successor in business, and if a single factor is present, the Department may presume such categorization, we affirm the AHO's conclusion that High Desert failed to overcome this presumption.

## II. High Desert Is a Mere Continuation

**{21}** The parties next dispute whether High Desert is a mere continuation of WRI.[2] NMSA 1978, Section 7-1-63(C) (1997) provides:

> A successor may discharge an assessment made pursuant to this section by paying to the department the full value of the transferred tangible and intangible property. The successor shall remain liable for the amount assessed, however, until the amount is paid if:
>
> > (1)     the business has been transferred to evade or defeat any tax;
> >
> > (2)     the transfer of the business amounts to a de facto merger, consolidation, or *mere continuation* of the transferor's business; or
> >
> > (3)     the successor has assumed liability.

(Emphasis added.)

**{22}** Under 3.1.10.16(F)(1) NMAC, " 'mere continuation' is determined by the 'substantial continuity test' . . . addressing whether the successor maintains the same business with the same employees doing the same jobs under the same supervisors, work conditions and production process and produces the same product for the same customers." Under the substantial continuity test set forth by 3.1.10.16(F)(1) NMAC, High Desert plainly constitutes a mere continuation of WRI. High Desert continues to conduct a repossession business at the same address, serving most of the same customers, and utilizing the same employees. *See* § 9-11-6.2(G) (explaining that the Department's administrative regulations are presumed to be proper).

**{23}** In addition to the substantial continuity test provided by 3.1.10.16 NMAC, our Supreme Court has supplemented the substantial continuity test with additional factors, explaining that, "[g]enerally, a continuation of the transferor corporation occurs where there is (1) a continuity of directors, officers, and shareholders; (2) continued existence of only one corporation after the sale of the assets; and (3) inadequate consideration for

---

*Revenue*, 1997-NMCA-115, ¶ 13, 124 N.M. 270, 949 P.2d 284 (explaining that uncontested administrative hearing officer findings are binding on appeal).

2The parties also dispute whether WRI transferred its assets to High Desert "for the purpose of evading or defeating tax" however, given our conclusion that High Desert is a mere continuation of WRI, we need not resolve this issue. *See Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 36, 137 N.M. 26, 106 P.3d 1273 ("A reviewing court generally does not decide academic or moot questions.").

the sale of the assets." *Garcia v. Coe Mfg. Co.*, 1997-NMSC-013, ¶ 13, 123 N.M. 34, 933 P.2d 243 (citing *McCarthy v. Litton Indus., Inc.*, 570 N.E. 2d 1008, 1012) (explaining that "the imposition of liability on the [successor] is justified on the theory that, in substance if not in form, the purchasing corporation is the same company as the selling corporation")).

**{24}**     Applying the three factors provided by *Garcia* alongside the statutory criteria, we remain persuaded that High Desert is a mere continuation of WRI. To reiterate, Brown was an officer—the president—as well as a director and the manager of WRI's daily operations, and continued to serve in these capacities at High Desert. High Desert asserts that it and WRI had "completely different owners" and "none of WRI's owners had any involvement with [High Desert]." Although WRI had three shareholders and High Desert was a single member LLC, Brown owned and managed the property where business was conducted and served as a member of WRI's board of directors.[3] Additionally, Brown's managerial responsibilities at High Desert are "essentially identical" to those at WRI and include overseeing employees, customer service, payroll and taxes.

**{25}**     Turning to the second *Garcia* factor, there remains only one corporation after the transfer of assets—High Desert. Indeed, the LLCs operated concurrently from the Franciscan Street NE address from May to September 2014. Considering the final factor of *Garcia*, inadequate consideration for the sale of the assets, we remain persuaded that High Desert is a mere continuation of WRI. Because of WRI's dissolution, there was no "sale of assets" as envisioned under *Garcia*. Nonetheless, the record demonstrates that in assuming the operation of the repossession business conducted by WRI, High Desert assumed possession of the equipment and materials used by WRI. Inadequate consideration is most notably demonstrated in High Desert's purchase of WRI's tow truck, which was determined by the MVD to have a value of $14,720, for a mere $700. For these reasons, we determine that High Desert is a mere continuation of WRI.[4]

### III.    Attorney Fees

**{26}**     High Desert contends that it is entitled to an attorney fee award because it is the "prevailing party" regarding its liability for interest. The Department initially assessed High Desert for $271,359.77, of which $143,594.85 constituted interest and penalties. In its protest, High Desert argued that the interest portion of this assessment should be

---

3While we note that the shareholders of WRI and High Desert are not identical, Brown's role as an officer and director of both corporations combined with our analysis of the second and third *Garcia* factors, leads us to conclude that the supplemental factors provided by *Garcia* support a determination that High Desert is a mere continuation of WRI. To determine that High Desert is not a continuation of WRI because Brown was not a shareholder of WRI would run afoul of the purpose of the successor in business framework. *See Sterling Title Co.*, 1973-NMCA-086, ¶ 23; *see also Baker v. Hedstrom*, 2013-NMSC-043, ¶ 11, 309 P.3d 1047 ("When construing statutes, our guiding principle is to determine and give effect to legislative intent." (internal quotation marks and citation omitted)).

4Because we determine that High Desert is a "mere continuation," we decline to address its argument that its liability is limited to the value of the assets transferred to it from WRI.

abated based on our holding in *Hi-Country Buick GMC*, 2016-NMCA-027, ¶ 22 (holding that successor in business could not be held liable for interest and penalties assessed against the predecessor). However, the Department abated the interest prior to a hearing on the protest, and ultimately assessed High Desert for $127,764.92.

**{27}**    NMSA 1978, Section 7-1-29.1(A) (2019) provides that a "taxpayer shall be awarded a judgment or a settlement for reasonable administrative costs and reasonable litigation costs and attorney fees incurred" in connection with an administrative or court proceeding "if the taxpayer is the prevailing party." Section 7-1-29.1(C)(1)(a) explains that a taxpayer is the prevailing party if the taxpayer has "substantially prevailed with respect to the amount in controversy"; or under Section 7-1-29.1(C)(2) is not the prevailing party if "the [AHO] finds that the position of the [D]epartment in the proceeding was based upon a reasonable application of the law of the facts to the case." The determination of whether the taxpayer is the prevailing party is made either: (1) "by agreement of the parties"; (2) or "in the case where the final determination with respect to the tax, interest or penalty is made in an administrative proceeding, by the hearing officer"; or (3) "in the case of a court proceeding, by the court." Section 7-1-29.1(4).

**{28}**    In *Hi-Country Buick GMC*, this Court considered whether a successor purchaser of a business tax liability included penalties and interests accrued by the predecessor seller. 2016-NMCA-027, ¶ 19. We explained that the definition of tax, as provided by Section 7-1-61(A), "specifically deals with the narrow circumstances involving successor-in-business tax liability" and limits the successor's liability to "the amount of tax imposed by the provisions of the Withholding Tax Act and the Gross Receipts Tax Act." *High-Country Buick GMC*, 2016-NMCA-027, ¶ 20 (internal quotation marks and citation omitted). Because Section 7-1-61(A) defined "tax" more narrowly than other sections of the tax code, we held that the successor in business was not liable for interest and penalties assessed against the predecessor. *High-Country Buick GMC*, 2016-NMCA-027, ¶ 22. Our decision was guided by policy considerations, and, importantly, we noted that "because penalties and interest are effectively punitive, it is reasonable to limit those liabilities to be paid by the previous business owner who incurred them rather than impose this punishment upon the successor who bore no responsibility for the unpaid taxes." *Id.*

**{29}**    Although *Hi-Country Buick GMC* clarified that a purchaser successor in business should not be liable for the penalties and interest of its predecessor, the Department's initial interpretation of *Hi-Country Buick GMC* was reasonable. *See* Section 7-1-29.1(C)(1)(a), (2). While *Hi-Country Buick GMC* expressly considered the tax liability of successor in business who purchased a car dealership, including all of its assets, as we explained above, there was no such sale and purchase of the predecessor business in the case at hand. Moreover, the policy considerations that guided our decision in *Hi-Country Buick GMC* are inapplicable to the case at hand. Although we determined that the purchaser of the predecessor business was a successor in business, our decision in *Hi-Country Buick GMC* did not consider whether the successor in business was a "mere continuation." Whereas here, because High Desert is a mere continuation of WRI, High

Desert bore some responsibility for the unpaid taxes of its predecessor. For these reasons, we determine that the Department's application of *Hi-Country Buick GMC* to the facts at hand, while albeit incorrect, was not unreasonable. Therefore, High Desert is not the prevailing party, and we deny its request for an award of attorney fees.

**CONCLUSION**

**{30}** Because we determine that High Desert is a successor in business, as well as a mere continuation, and is not entitled to attorney fees and costs, we affirm.

**{31} IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**JANE B. YOHALEM, Judge**

**GERALD E. BACA, Judge**